UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL H. GIER,

           Plaintiff,

                                   CIVIL ACTION NO. 08-11745

    vs.                            DISTRICT JUDGE VICTORIA A. ROBERTS

                                   MAGISTRATE JUDGE MONA K. MAJZOUB

COMMISSIONER OF
SOCIAL SECURITY,

           Defendant.

_____/

REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION:**    Plaintiff's Motion for Summary Judgment (Docket no. 13) should be DENIED, and that of Defendant (Docket no. 12) GRANTED, as there was substantial evidence on the record that Plaintiff underwent medical improvement related to his ability to work and is capable of performing his past relevant work.

*** 

**II.**   **PROCEDURAL HISTORY:**

      Plaintiff filed an application for disability and Disability Insurance Benefits on January 22, 2001 alleging that he had been disabled and unable to work since July 11, 2000. (TR 54). In a decision dated April 18, 2001 the Social Security Administration found that Plaintiff was disabled as of July 11, 2000 due to a condition meeting Listing 1.03. (TR 28, 190). In 2003 the Social Security Administration conducted a disability review and determined that Plaintiff no longer met Listing 1.03 and he was no longer disabled as of November 1, 2003. (TR 57-60, 190). Plaintiff's request for reconsideration was denied and a requested *de novo* hearing was held on March 22, 2007 before Administrative Law Judge (ALJ) Richard L. Sasena. (TR 36, 188). The ALJ subsequently

found that Plaintiff was no longer disabled as of November 1, 2003.  (TR 28).  The Appeals Council

declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review.

(TR 4-6).  The issue raised for review is whether the ALJ's decision to terminate his benefits was

supported by substantial evidence on the record[1].

III.    **PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE AND VOCATIONAL EXPERT
        TESTIMONY**

    A.    **Plaintiff's Testimony**

        Plaintiff was 49 years old at the time of the hearing.  (TR 196).  Plaintiff has a bachelor's

degree in accounting and past work experience as a traveling salesman for automotive-related

products.  (TR 193, 198).  He stopped working because he could no longer travel due to the

condition of his hip.  (TR 193).

        Plaintiff underwent left hip replacement surgery in April 2001.  (TR 190, 195).  Plaintiff

testified that after the hip surgery he underwent a body scan which revealed back "problems."  (TR

194).  Plaintiff testified that due to the back problems he cannot sit or drive for long periods of time.

(TR 194).  Plaintiff testified that he also has osteoporosis and that his right hip and right knee are

"going."  (TR 194).  Plaintiff testified that due to the hip replacement he has a basal cell carcinoma

on his back.  (TR 194).  The record does not contain medical evidence of a carcinoma.  Plaintiff

testified that he underwent hernia surgery on his left side.  (TR 195).

        Plaintiff testified that he has torn rotator cuffs and arthritis in his neck due to osteoporosis.

(TR 195-96).  Plaintiff testified that his shoulder pain is constant and he rated it at an eight to ten

_____

        [1]Plaintiff did not timely file a Motion for Summary Judgment by July 29, 2008, as
ordered by the Court.  (Docket no. 7).  Defendant timely filed a Motion for Summary Judgment.
(Docket no. 12).  Plaintiff filed a document titled Plaintiff's Motion for Summary Judgment and
Plaintiff's Reply, which was timely filed before the due date for Plaintiff's reply.  (Docket no.
13).  The Court will consider the issues set forth in Plaintiff's Reply/Response.  (Docket no. 13).

on a scale of ten.  (TR 204).  Plaintiff testified that he has had knee and back pain since April 2001.  (TR 196).Plaintiff stated that he has lower back pain and sometimes his neck pain radiates down, as does the shoulder pain, into the deltoid muscle, the elbow and the forearm.  (TR 198).  Plaintiff testified that he was prescribed a brace for his back, however, there is no medical evidence that the brace was prescribed.  (TR 199).  Plaintiff has lower back pain every day and rates the lowest intensity of the pain at a five on a scale of ten and the highest intensity at a ten.  (TR 199).  Plaintiff testified that the pain is made worse with sitting for more than one hour, standing for more than a half-hour, laying, walking and driving.  (TR 200, 203).

He testified that he lifts weights almost daily for no longer than a half-hour.  (TR 200-02).  He uses a universal machine and lifts fifteen pound weights.  (TR 200-01).  He also testified to using an electronic TCP light therapy machine and an inversion table, which he states were prescribed by an alternative doctor.  (TR 200).  He also testified that he wears magnets on his knees and his back to increase his blood flow and decrease his pain.  (TR 197).  For his back pain Plaintiff uses non-prescription topical treatments, ice packs and heat packs.  (TR 201-02).  Plaintiff takes Aleve and ibuprofen for his pain.  (TR 202).  He testified that he took Naprosyn for thirteen years until he began to have stomach problems.  (TR 202).  Plaintiff testified that his pain is worse than it was at the time of the April 2004 Social Security Administration decision.  (TR 202).

Plaintiff also testified that he has daily discomfort in both hips.  (TR 202).   Plaintiff stated that he lost an inch and a half in his left leg when his hip collapsed and he wears a half-inch lift in his shoe.  (TR 196).  Plaintiff rated the pain at its lowest level at a four or five on a scale of ten and a ten at its worst.  (TR 202).  He testified that his left hip is better after the surgery; the pain went from a ten to a five.  (TR 203).  Plaintiff also rated the right hip pain at a five.  (TR 203).  Plaintiff

3

can walk  a couple of blocks and has what he described as a "noticeable limp."  (TR 200).  He

problems sleeping at night and uses body pillows to alleviate the pressure.  (TR 202).  Plaintiff

testified that he has right knee pain about once per week.  (TR 203).  Some days he uses a cane to

walk.  (TR 196).

Plaintiff testified at the hearing that he was being treated for depression and had just finished

a five-month program including group and individual therapy.  (TR 208).  He testified that his

family doctor prescribes his medication for depression and he has tried Prozac, Lithium and

Wellbutrin, but each made him more depressed, angry and anxious and increased his suicidal

thoughts.  (TR 208).  The record does not contain evidence of treatment for mental impairments

other than Plaintiff's testimony and a Psychological Medical Report.   (TR 127-30).  Plaintiff

testified that his depression would affect his ability to work because he has panic and anxiety

attacks.  (TR 210).  He testified that he had the last panic attack a couple of months prior to the

hearing due to the anxiety and depression of the holiday season.  (TR 210).

Plaintiff lives alone in a two-story house.  (TR 198).  Plaintiff is able to perform his personal

hygiene tasks.  (TR 210).  He testified that he does not do any work around the house except

occasionally wash dishes.  (TR 211).  He stated that he participates in reading, meditation and his

therapy sessions and he no longer socializes with most of his friends.  (TR 211-12).  He is able to

drive.  (TR 212).  Plaintiff testified that he has not drunk alcohol since September 11, 2006.  (TR

213).  Plaintiff takes a couple of half-hour naps per day and states that the Valium he takes makes

him tired.  (TR 213).

4

**B.** **Medical Evidence**

*1.* ***Evidence of Physical Impairments***

Plaintiff testified that he has treated with James J. Verner, M.D., since the late 1980s or early 1990s when he was diagnosed with avascular necrosis and aseptic arthritis. (TR 207). Plaintiff was diagnosed with osteonecrosis of the left hip and underwent a resurfacing arthroplasty in 2001. (TR 150). Medical evidence related to Plaintiff's left hip is set forth in further detail with the analysis of Plaintiff's medical improvement below.

On February 17, 2004 Elizabeth W. Edmond, M.D., noted that Plaintiff complained that he had developed some pain in the right hip over the past three years. (TR 106). Plaintiff also reported pain in his lower back, pain in his neck, some stiffness in his left shoulder and aching pain in both knees. (TR 106). Plaintiff reported that he had not seen a primary physician or had a general check up for about three years. (TR 106). Dr. Edmond noted that Plaintiff presented with elevated blood pressure, for which he took medication in February 2001 but he stopped the medication. (TR 106). Dr. Edmond noted that Plaintiff had full range of motion in the shoulders with no crepitation, erythema or increased warmth. (TR 107). Dr. Edmond reported crepitation in both knees but full range of motion, no erythema, no increased warmth and no sign of cruciate, medial or lateral ligament instability. (TR 107). Dr. Edmond noted full range of motion with no spasm in the dorsolumbar spine and the cervical spine. (TR 107). Plaintiff reported taking no prescription medication at the time and was taking over the counter herbs and vitamins. (TR 106). Dr. Edmond noted that Plaintiff reported feeling as if he had developed depression, but that he was not seeing a physician for it. (TR 107). Plaintiff drove himself to the examination. (TR 106). Dr. Edmond's final clinical impressions were post surgical procedure left hip arthroplasty, probable development of

5

arthritis in the right hip, arthritis in both knees, hypertension and a history (by Plaintiff) of depression. (TR 108). With respect to Plaintiff's fine dexterity Dr. Edmond noted that "he can open a jar, button clothing, write legibly, pick up a coin and tie his shoes." (TR 108).

On March 15, 2004 Plaintiff underwent a whole body scan. (TR 112-126, 158-70). The body scan revealed "[m]arked degenerative changes with disk space narrowing, endplate sclerosis, and vacuum phenomenon" at the L1-L2 level, degenerative spur formation along the anterior margin of the lower thoracic spine and degenerative changes with anterior and posterior hypertrophic spur formation within the lower cervical spine at the C6-C7 level. (TR 114). Plaintiff's bone density measurements were all within the low normal to normal range. (TR 114-15). The scan revealed a small mass on the right kidney with density measurements consistent with that of a small cyst. (TR 115).

On December 13, 2006 Plaintiff saw Dr. Verner and complained of anterior right knee pain and a "six-month history of increasing left shoulder pain with weakness during overhead activities." (TR 150). Examination of the right knee revealed retropatellar crepitation with some pain along the lateral facet and no knee effusion. (TR 150). Range of motion was from zero to over 135 degrees. (TR 150). Plaintiff had some restricted motion of the left shoulder with overhead reaching and Dr. Verner noted that he thought the restriction was pain-related. (TR 150). Dr. Verner diagnosed right patellofemoral syndrome with early degenerative joint disease of the right knee, possible left rotator cuff arthropathy and "[f]ive years status post left resurfacing, doing well." (TR 150). On March 21, 2007 Plaintiff was examined by Kyle Anderson, M.D., for complaints of problems with both shoulders. (TR 149). An MRI of the left shoulder revealed a thin rotator cuff and small full-thickness tear with no real significant atrophy and some moderate acromioclavicular joint arthrosis.

6

(TR 149, 154). Dr. Anderson restricted Plaintiff from activity from March 21, 2007 to May 23, 2007
stating that Plaintiff would need physical therapy and possible repair of the left shoulder rotator cuff.
(TR 155).   There is no evidence that these restrictions were extended beyond May 23, 2004.

Plaintiff attended nine physical therapy sessions from March 28, 2007 through his April 25,
2007 discharge date.  (TR 153).  The discharge summary states that at discharge Plaintiff noted
"significant improvement with eating and driving activities" and reports of shoulder pain.  Plaintiff
rated his left shoulder pain at zero on a scale of ten and right shoulder pain at three to four.  (TR
153). Both ratings were an improvement over his initial pain ratings. (TR 153). On March 28, 2007
Plaintiff had rated his left shoulder pain at five on a scale of ten and right shoulder pain at eight.
(TR 151).  At discharge, Plaintiff's bilateral shoulder range of motion was within functional limits
and without pain. (TR 153).  On May 23, 2007 Dr. Anderson noted that Plaintiff had done well with
physical therapy and Plaintiff reported feeling about fifty percent improved.  (TR 148).  Dr.
Anderson noted that Plaintiff had "good strength in elevation and external rotation" and "does not
substitute or elevate his scapula at all."  (TR 148).  Plaintiff did not undergo a right shoulder MRI
as recommended due to his reported claustrophobia and problems with the first MRI.  (TR 148).

**2.**      ***Evidence Of Mental Impairments***

Sharon Ridella-Mehlos, Ph.D., evaluated Plaintiff on April 5, 2004.  (TR 127-30).  Dr.
Ridella-Mehlos concluded that Plaintiff has generalized anxiety disorder (300.02), adjustment
disorder with depressed mood (309.0) and a personality disorder (not otherwise specified) with
obsessive-compulsive personality features (301.9).  The doctor reported that Plaintiff's mental
activity was logical, he presented himself in a socially appropriate manner and he lacked insight into
his psychological issues. (TR 128-29).  He arrived to the appointment on time, he was "particularly

7

well groomed" and his posture and gait were normal.  (TR 128).  Dr. Ridella-Mehlos noted that

Plaintiff "may allow symptoms to control his life more than is necessary" and his "focus on his

physical condition may not provide him opportunities to interact with others and improve his

psychological state of mind."  (TR 128). She reported that Plaintiff's "level of intellectual

functioning is average or above and his memory is likely generally unimpaired." (TR 130).  Dr.

Ridella-Mehlos assigned Plaintiff a GAF of 55 and concluded that he is able to manage his own

funds. (TR 130).

### C.     Vocational Expert Testimony

The Vocational Expert ("VE") testified that Plaintiff's past work as a sales manager was

skilled and sedentary in exertion as it is traditionally performed in the national economy, but very

heavy as it was performed by Plaintiff.  (TR 218).  Plaintiff's past work as a sales representative was

skilled and light in exertion as it is traditionally performed in the national economy and very heavy

as it was performed by Plaintiff.  (TR 219).

The ALJ asked the VE to consider an individual of Plaintiff's age, a younger individual aged

45 to 49, with Plaintiff's education (high school graduate or more), limited to light work with only

occasional climbing, balancing, stooping, kneeling, crouching and crawling and the need to avoid

concentrated exposure to unprotected heights and moving machinery.  (TR 219). The VE testified

that such an individual could perform Plaintiff's past relevant work as it is performed in the

economy, but not as Plaintiff performed it.  (TR 219).  The VE further agreed that a limitation to

skilled work limited to simple, routine and repetitive tasks to accommodate the effects of pain and

medication would eliminate the ability to do Plaintiff's past relevant work.  (TR 219).  The VE

testified that even if the individual were limited to unskilled work, there would be jobs available in

the regional economy which the individual could perform including retail sales attendant (5,500 jobs in Michigan, 186,000 in the national economy), cashier (29,900 in Michigan and 987,000 in the national economy) and general office clerk (4,900 jobs in Michigan, 165,000 jobs in the national economy). (TR 220). The VE also testified to a reduced number of jobs available for an individual with the same restrictions yet limited to sedentary work. (TR 220). The VE testified that an employer would normally grant a morning break and an afternoon break of approximately fifteen to twenty minutes in length. (TR 220). One absence per month would be the maximum number of accepted absences. (TR 220). The VE testified that her testimony was consistent with the Dictionary of Occupational Titles. (TR 221).

## IV.   ADMINISTRATIVE LAW JUDGE'S DETERMINATION:

The ALJ found that at the time of Plaintiff's most recent favorable decision finding him disabled, the "comparison point decision" ("CPD") on April 18, 2001, Plaintiff suffered from status post left hip arthroplasty medically equal to Listing section 1.03, 20 C.F.R Part 404 Subpart P, Appendix 1, 20 C.F.R. § 404.1520(d). (TR 30). The ALJ found that Plaintiff had not engaged in substantial gainful activity through November 1, 2003. (TR 30). The ALJ found that as of November 1, 2003 Plaintiff suffered from status post left hip arthroplasty, degenerative joint disease, degenerative disc disease, rotator cuff tear, generalized anxiety disorder and an adjustment disorder, all severe impairments, however, he did not have an impairment or combination of impairments that met or equaled the Listing of Impairments. (TR 30-31). The ALJ found that medical improvement occurred as of November 1, 2003 and the medical improvement is related to Plaintiff's ability to work because the impairment that was present at the time of the CPD no longer met or was equal to the Listing of Impairments. (TR 31). The ALJ found that Plaintiff's statements concerning the

9

effects of his symptoms were generally credible, but not to the extent alleged. (TR 32). The ALJ concluded that based on the impairments present as of November 1, 2003 and as a result of medical improvement, Plaintiff had the capacity to perform a limited range of light work and is capable of performing his past relevant work as a sales manager and salesperson. (TR 35). Therefore he was not suffering from a disability under the Social Security Act. (TR 35-36).

**V.**     **LAW AND ANALYSIS:**

   **A. Standard Of Review**

   Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

   In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial

10

evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**B.     Framework For Social Security Disability Determinations**

Plaintiff's initial Social Security disability determination was made in accordance with a five step sequential analysis.  In the first four steps, Plaintiff was required to show that:

(1)     he was not presently engaged in substantial gainful employment; and

(2)     he suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     he did not have the residual functional capacity to perform his relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented him from doing his past work, the Commissioner, at step five, would consider his residual functional capacity ("RFC"), age, education and past work experience to determine if he could perform other work.  If he could not, he would be deemed disabled.  *See* 20 C.F.R. § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualification to perform specific jobs."  *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"  *Id.* (citations omitted).  Plaintiff was initially determined to be

11

disabled at step two of the analysis.  The ALJ's recent determination that Plaintiff is no longer disabled was made in accordance with the evaluation steps set forth at 20 C.F.R. section 404.1594(f)(1)-(8).

Plaintiff alleges that the ALJ's decision that Plaintiff's disability ended on November 1, 2003 is not supported by substantial evidence.  (Docket no. 13).  Plaintiff argues that the ALJ failed to consider evidence which Plaintiff cites in his Motion For Summary Judgement and Reply to Defendants' Motion.  (Docket no. 13).

 **C.**  **Analysis**

***1.*** ***Whether Plaintiff Underwent Medical Improvement Related To His Ability To Work***

The ALJ found that as of November 1, 2003, as a result of medical improvement, Plaintiff was no longer disabled when he was found to have the RFC to perform less than the full range of light work[2].  (TR 31-36).  Plaintiff argues that this finding is not supported by substantial evidence because his body scan of March 15, 2004 shows that he has back impairments.  Furthermore, he alleges that he has two torn rotator cuffs and he was diagnosed with depression and anxiety. (Docket no. 13).

Once a claimant has been awarded disability benefits, an ALJ must find that there has been a medical improvement in the beneficiary's condition before terminating the claimant's benefits. Title 42 U.S.C. § 423(f) provides:

> A recipient of benefits under this title . . . based on the disability of any individual may be determined not to be entitled to such benefits on the basis of a finding that the physical or mental impairment on

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).

the basis of which such benefits are provided has ceased, does not exist, or is not disabling only if such finding is supported by –

(1) substantial evidence which demonstrates that –

(A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and

(B) the individual is now able to engage in substantial gainful activity;

42 U.S.C. § 423(f)(1). "If substantial evidence supports both prongs, then the Secretary correctly terminated" the claimant's benefits. *See Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Any improvement in the beneficiary's impairment meets the statutory standard for medical improvement. *See* 42 U.S.C. § 423(f); 20 C.F.R. § 404.1594(c)(1).

"To apply the medical improvement test, the ALJ must first compare the medical severity of the current impairment(s) to the severity of the impairment(s) which was present at the time of the most recent favorable medical decision finding the claimant disabled." *Shepherd v. Apfel*, 184 F.3d 1196, 1201 (10th Cir. 1999). "Then, in order to determine that medical improvement is related to ability to work, the ALJ must reassess a claimant's residual functional capacity (RFC) based on the current severity of the impairment(s) which was present at claimant's last favorable medical decision." *Id.* The regulations set forth evaluation steps at 20 C.F.R. section 404.1594(f) to assure that disability reviews are carried out in a uniform manner. The ALJ properly engaged in the evaluation of whether Plaintiff had a continuing disability. *See* 20 C.F.R. § 404.1594(f). At the first through fourth steps of the evaluation the ALJ found that Plaintiff had not engaged in substantial gainful activity, Plaintiff did not have an impairment or combination of impairments that meets or

13

equals the severity of the Listings, there had been a medical improvement as shown by a decrease in medical severity and the medical improvement was related to Plaintiff's ability to work. *See* 20 C.F.R. § 404.1594(f)(1)-(4).

Plaintiff was initially determined to be disabled as of July 11, 2000 because his impairment met Listing 1.03 of the Category of Musculoskeletal impairments, which requires "Reconstructive surgery or surgery arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset." 20 C.F.R. Ch. III, Pt. 404, Subpt. P, App. 1, Listing 1.03. Listing 1.00B2b generally defines the inability to ambulate effectively as "having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. Ch. III, Pt. 404, Subpt. P, App. 1 Listing 1.00B1. One example of ineffective ambulation is "the inability to walk without the use of a walker, two crutches or two canes." Listing 1.00B2b. Plaintiff has the burden of demonstrating that his impairment meets or equals a listed impairment. *Foster v Halter*, 279 F.3d 348, 354 (6th Cir. 2001) ("A claimant must demonstrate that her impairment satisfies the diagnostic description for the listed impairment in order to be found disabled thereunder").

The ALJ stated that as of the CPD, Plaintiff "had extreme difficulty placing any weight on his left hip, which had considerable degeneration of the femoral head and avascular necrosis, and this condition became so severe he required left hip arthroplasty." (TR 30). The ALJ cited to medical evidence supporting the CPD findings and the parties do not challenge the prior finding that Plaintiff was disabled. The ALJ found, however, that as of November 1, 2003 Plaintiff could effectively ambulate and no longer had an impairment which met or medically equaled the Listing

14

of Impairments.  (TR 31).  In his decision the ALJ relied on Dr. Verner's notes from Plaintiff's

September 18, 2002 examination.  (TR 104).  Dr. Verner noted that Plaintiff did not use a cane for

walking but continued "to limp due to leg length inequality."  (TR 104).  Dr. Verner noted that

Plaintiff had a one centimeter length inequality in the operative (left) leg.  (TR 104).  Plaintiff was

able to straight leg raise against gravity, he had 5/5 abductor strength and range of motion was "well

preserved and pain-free."  (TR 104).  Dr. Verner noted that Plaintiff was using no analgesics.  (TR

104).  Plaintiff had not returned to low impact sports, but was exercising and stretching.  (TR 104).

The ALJ cited to x-rays taken on May 30, 2003 which showed "no interval change in the

appearance of the left hip arthroplasty, which remains satisfactorily aligned,"  "some heterotopic

ossification laterally" and "coils in the left pelvis."  (TR 103).  The x-rays showed that the "[r]ight

hip is unremarkable."  (TR 103).  On May 30, 2003 Dr. Verner noted that Plaintiff complained of

"no pain other than occasional groin pain with hyperflexion activities such as bending forward to

pull a golf ball out of a hole or during leg press exercises at the health club."  (TR 102).  Plaintiff

reported using no analgesics for this sporadic problem.  (TR 102).  Plaintiff had leg length inequality

but was not using a shoe lift.  (TR 102).  Plaintiff's straight leg raising and abductor strength were

5/5 and range of motion was the same as the September 2002 examination.  (TR 102).

The ALJ also based his findings on Dr. Edmond's February 17, 2004 examination of

Plaintiff, which revealed that Plaintiff had improved enough following his surgery that he was able

to ambulate without the use of an aide.  (TR 31, 106).  Dr. Edmond reported that Plaintiff did not

use an ambulatory aid and had a "tendency to slightly favor the left leg" as he walked.  (TR 107).

Plaintiff was able to get on and off the examining table independently and was able to tandem walk,

stand on his right leg, stand on his left leg momentarily, and stand on heels and toes.  (TR 107).  Dr.

Edmond noted that if Plaintiff used a lift in his left shoe it may improve his gait and for "uneven ground, slopes or prolonged walking, the use of a cane would give an additional point of balance and improve gait pattern." (TR 108). The ALJ also pointed out that on December 13, 2006 Dr. Verner reported that Plaintiff "has done nicely with regard to the hip" and that Plaintiff "is quite active." (TR 150). Examination of the left hip showed "no new changes in range of motion or in strength." (TR 150). On March 22, 2007 Plaintiff testified that he is able to walk a couple of blocks, although he alleges that he has a "noticeable limp." (TR 200).

There is evidence from as early as September 18, 2002 that Plaintiff was able to ambulate without using an aide. (TR 104). Dr. Edmond's February 17, 2004 report is additional evidence that Plaintiff was ambulating without the use of an aide. (TR 106-08). Substantial evidence supports the ALJ's decision that medical improvement occurred as of November 1, 2003 and Plaintiff could ambulate effectively. Plaintiff no longer met Listing 1.03 and his medical improvement was related to his ability to work. *See* 20 C.F.R. § 404.1594(c)(3)(i) ("If medical improvement has occurred and the severity of the prior impairment(s) no longer meets or equals the same listing section used to make our most recent favorable decision, we will find that the medical improvement was related to your ability to work."). The more recent evidence shows that Plaintiff remains ambulatory.

## 2.    *Plaintiff's Ability To Engage In Gainful Activity*

Next, the ALJ properly considered whether Plaintiff was able to engage in gainful activity before concluding that his disability had ended. *See* 20 C.F.R. § 404.1594(c)(3)(i). After finding that Plaintiff had a medical improvement related to his ability to work, the ALJ considered whether all of Plaintiff's current impairments in combination are severe and the impact of the impairments on Plaintiff's ability to work. *See* 20 C.F.R. § 404.1594(f)(6). The ALJ's conclusion that Plaintiff

16

has the severe impairments status post left hip arthroplasty, degenerative joint disease, degenerative

disc disease, rotator cuff tear, generalized anxiety disorder and an adjustment disorder[3] but that they

do not meet or equal the Listing is supported by substantial evidence.  (TR 30).  As set forth above,

to meet the requirements of a listed impairment, Plaintiff must meet all of the elements of the listed

impairment.  *See Hale v. Sec'y of Health and Human Servs.*, 816 F.2d  1078, 1083, (6th Cir. 1987)

(citing *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984)).  Plaintiff has not shown that he meets

the Listing and the ALJ's decision at this step is supported by substantial evidence.

Plaintiff does not challenge the ALJ's findings related to his credibility.  The Court notes

however, that the ALJ engaged in an analysis of Plaintiff's credibility and found that Plaintiff's

statements concerning the intensity, persistence and limiting effects of his symptoms were not

entirely credible.  (TR 33).  The ALJ's conclusions regarding credibility should be accorded

deference and should not be discarded lightly because the ALJ has the opportunity to observe the

demeanor of a witness.  *See Casey v. Sec'y of Health and Human Servs.,* 987 F.2d 1230, 1234 (6th

Cir. 1993).  A finding that a claimant is not credible must be supported by substantial evidence in

the same manner as any other ultimate factual determination.

The ALJ properly referenced Plaintiff's specific activities of daily living, including

Plaintiff's ability to do his own laundry, make breakfast and lunch and participate in exercise.  (TR

35, 77, 128).  The ALJ cited the lack of restrictions related to Plaintiff's back impairments, knees

---

[3]Although not raised on appeal, the Court notes that the ALJ also engaged in an analysis
of Plaintiff's mental impairments under 20 C.F.R. § 404.1520a.  The ALJ found that Plaintiff had
only mild limitations in the functional areas of activities of daily living, social functioning and
concentration, persistence and pace and no evidence of episodes of decompensation.  The ALJ
supported these findings with references to the record evidence and the Court finds that the
ALJ's findings are supported by substantial evidence.  (TR 35).

and hips.  He also pointed out that Plaintiff does not use prescription pain medication to manage pain related to his impairments and he noted a lack of special treatment for Plaintiff's back impairments. (TR 34).  The ALJ cited to evidence that Plaintiff responded well to physical therapy for his shoulders and made improvement in his shoulder pain and range of motion.  (TR 34).  The ALJ properly considered the record and Plaintiff's allegations of symptoms.  The ALJ's findings regarding Plaintiff's credibility and his symptoms is supported by substantial evidence.  *See* 20 C.F.R. § 404.1529(c)(2); *see also* 20 C.F.R. § 404.1529(c)(3); *Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994).

The ALJ found that as of November 1, 2003 Plaintiff has the RFC to perform light work limited to lifting no more than twenty pounds occasionally and ten pounds frequently, limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling and no work at unprotected heights or with machinery.  *See* 20 C.F.R. § 404.1594(f)(7).  The RFC for light work includes a limitation to frequent lifting of weights no more than ten pounds, which is lighter than the weights which Plaintiff uses to exercise.  (TR 200-01).  The record does not contain restrictions on Plaintiff's ability to lift weights or use his arms as a result of the shoulder impairments and Plaintiff's doctors have not restricted Plaintiff's ability to ambulate as a result of either the hips or knees.  As the ALJ points out, there is no evidence in the record of limitations or restrictions as a result of Plaintiff's degenerative disc disease and there is no evidence that the back brace which Plaintiff wears was actually prescribed.  (TR 34).  There is no evidence that Plaintiff is undergoing any special treatment for his back impairment, other than his own regime of vitamins, herbs, exercises and use of magnets.  (TR 35).  Dr. Edmond reported that Plaintiff has full range of motion in the dorsolumbar spine and the cervical spine.  (TR 107).  There is no medical evidence in the

18

record to support a need for mental limitations in Plaintiff's RFC. (TR 127-30). The ALJ also correctly points out that Plaintiff has not required prescription pain medications to manage any of these impairments. The ALJ's finding that Plaintiff had the ability to perform less than the full range of light work activity is supported by substantial evidence.

Finally, the ALJ determined that Plaintiff can perform his past relevant work. *See* 20 C.F.R. § 404.1594(f)(7). In a hypothetical question posed to the VE, an ALJ is required to incorporate only those limitations which he finds credible and supported by the record. *See Casey v. Sec'y of Health and Human Servs.,* 987 F.2d 1230, 1235 (6th Cir. 1993). The ALJ's hypothetical question to the VE incorporated all aspects of Plaintiff's RFC, including non-exertional limitations that the ALJ found credible and supported by the record. The ALJ properly relied on the VE's testimony to determine that Plaintiff can perform his past relevant work[4]. The ALJ's finding that Plaintiff was no longer disabled as of November 1, 2003 is supported by substantial evidence. *See* 20 C.F.R. § 404.1594(g)(2).

## VI.    CONCLUSION

The ALJ's decision was within the range of discretion allowed by law, it is supported by substantial evidence and there is simply insufficient evidence to conclude otherwise. Defendant's

---

[4]To the extent that the VE testified that Plaintiff's past relevant work as performed by Plaintiff was at a higher exertional level than the work as it is generally performed, this was not error. The relevant inquiry is whether Plaintiff can return to his past type of work, not just his former job. *See Studaway v. Sec'y of Health and Human Servs.,* 815 F.2d 1074, 1076 (6th Cir. 1987) (the plaintiff's argument rested on "the incorrect assumption that his burden is to show merely an inability to return to his old job . . . . This view rests on too narrow a construction of the standard of eligibility for benefits. . . . He must prove 'an inability to return to his former *type* of work and not just to his former job.'" (Citations omitted.)).

Motion for Summary Judgment (docket no. 12) should be granted, that of Plaintiff (docket no. 13) denied and the instant complaint dismissed.

**REVIEW OF REPORT AND RECOMMENDATION:**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: March 06, 2009                              s/ Mona K. Majzoub
                                                   MONA K. MAJZOUB
                                                   UNITED STATES MAGISTRATE JUDGE

20

**<u>PROOF OF SERVICE</u>**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: March 06, 2009                             s/ Lisa C. Bartlett_____
                                                  Courtroom Deputy